Case No. 3-3588, Thomas Metyk et al. v. KeyCorp et al. Oral argument, 15 minutes per side. Mr. Fearon for the appellants. Good morning, Your Honor. Good morning. Please record, I'm Stephen Fearon from New York on behalf of the appellants, Mr. Metyk and Mr. Labasso. With the court's permission, I'd like to reserve three minutes for rebuttal. Sure. Thank you. This is a proposed class action on behalf of participants in the KeyCorp 401k plan. It's brought against the fiduciaries of that plan for offering KeyCorp stock as an investment alternative in the plan, which we allege was an imprudent investment for a number of reasons. We're here today to ask this court to reverse the district court's dismissal of the Metyk and Labasso complaint and also to reverse the district court on its refusal to open the final judgment in the case in order to allow us to amend our complaint. And when I say our complaint, I'm referring to the complaint that was filed by Mr. Metyk. Keep your voice up, please. I apologize. Sure. Now, it doesn't seem to me that your complaint alleges exclusively, as your exclusive theory, that there was artificial inflation. Correct. Well, I'm sorry. I'm sorry. That's not what I meant to say. It's been kind of a long morning. It doesn't seem to exclusively say imprudent investment, what you just said. Correct. I mean, it's fair to say, isn't it, that you do have an artificial inflation theory in here, in part, at least. Yes, Your Honor. And one of the reasons that we did that was because this case that was brought by Mr. Metyk and Mr. Labasso arose from – there was some prior litigation called the Taylor case, which eventually made its way here to the Sixth Circuit. And in the Taylor case, it was also a case just like this one that was brought on behalf of the participants in that same plan, alleging the same losses to the plan participants and to the plan itself. And there, the district court, the same district court judge, denied a Rule 12B6 motion and made some findings about the sufficiency of the allegations in the complaint. What happened next was that the plaintiffs in that Taylor case moved for class certification. And in response, the defendants moved on 12B1 ground, saying, not so fast. No injury. There's no injury here because you, Mr. Plaintiff, or Ms. Plaintiff, sold your stock during the period when you claimed that stock was artificially inflated, so you have no damages. And the district court agreed with defendants and dismissed the Taylor case on 12B1 grounds. Unfortunately for Mr. Metyk and Mr. Labasso, what happened next was that the plaintiff in the Taylor case then appealed to this court and put forth an alternative investment theory of damages, arguing in essence that there had been other courts around the country that had accepted an alternative investment theory of damages, basically saying that there could still be damages to the plaintiff, even if they sold, even if she sold, if the plaintiff's retirement investment had been invested instead of the common stock, invested in some alternative investment that was available in the plan. This court rejected that argument in Taylor and found that the plaintiff lacked standing, and there was a discussion by this court of the Dura case by the Supreme Court. An application of it. With respect to whether or not the plaintiff in Taylor had standing. And, I mean, our court said, our court rejected the idea that the Taylor complaint set forth an alternative investment theory and just said, no, we think it's an artificial inflation theory, and then the court went on to apply Dura. Is that fair? I think what this court also said. Is that, I mean, that's common ground here, isn't it? I think that's common ground. Okay. But I think in context what the court was saying there was for standing purposes. Right. You know, you look at whether this plaintiff had a loss. This court in Taylor considered some of the other decisions. For example, the Second Circuit decision in Donovan and said, we're not going to allow the plaintiff here to establish standing because on this alternative investment theory. I don't decide to suggest that your complaint basically duplicates that. And so if the court didn't find any merit in that case, what's different here about your case? So our case was filed after the district court dismissed on 12B1 grounds. But because we had the favorable decision from the district court on 12B6 grounds, we did file a complaint that practically mirrored the earlier Taylor complaint. However, what we did was we made clear in our complaint that these plaintiffs didn't need the alternative investment theory of damages and instead just had typical ERISA stock drop losses. Because they sold when it was not still inflated. They didn't sell. Or one did. One, my client, Mr. Mattick, continued to hold throughout the entire class period. And we put in a paragraph alleging that, you know, for example, Mr. Mattick's value of his holdings in the stock were X. And by the time that he filed his complaint, they were much less than that. We give the specifics about that. What were they less than he paid for them? Well, some of them were given as a match also. So it may not have been. That seemed to be another reason that Taylor exists, it seems to me, that if your stock could drop in price, but if it didn't drop below what you paid, then you had no standing. Well, the one issue with ERISA, as opposed to, for example, the securities laws that this court discussed in Taylor, is that in the ERISA type of claims that we have here, you don't have to sell or you don't have to buy or sell. It's enough to hold to have a claim. So for us here, we allege that Mr. Mattick had held the stock in the plan throughout the entire period. And just the fact that he was holding during that time period and then the stock price dropped after that. Sorry, please finish. That would be enough for us to state a claim under ERISA as opposed to a securities type of analysis where you need either a purchase or a sale. But to follow up that same question, do you specifically allege that the stock not only went down in value, but went down below the price that your client paid? And if so, what paragraph of the complaint is that? Because it's like a gazillion-paragraph complaint, right? Correct. If you need to find the paragraph number, you can give that to us in rebuttal, but I want to be really precise about that. Not just it went down. It went down below the price that your client paid. Okay. Because the paragraph I saw where you had money, your shares grew, but the price went down, but it didn't say it went down below what you paid for it. Okay. And I think that's an issue we have to think about. It is an issue to think about, and I will, on rebuttal, attempt to answer that question. But the other caveat here is that unlike the securities laws where there has to be a purchase, here under ERISA you don't actually have to have a purchase. It's enough to have a holder claim. And so, for example, whenever you acquire that stock, if the stock later comes up, when courts look to measure damages, they look at the difference between what that stock had been worth, not necessarily when you paid for it or acquired it by some other way. In the Taylor case, it went up and then it dropped some and she sold it. Yes. But it never went below what she paid for it. But I think the issue in Taylor was that in Taylor the plaintiff actually sold her stock during the same period of time during which she claimed that the stock was artificially inflated and therefore did not have damages. She benefited from the artificial inflation. Here, for example, MEDIC did not benefit from the artificial inflation. Why did you plead that? I'll make sure to answer that on rebuttal. But you say you make an alternative investment theory. No, we say we don't have to make an alternative investment theory. And one of the things we say is that the district court here, with respect, confused the issue of the alternative investment theory. There's an alternative investment theory of damages, and then there's a fiduciary would make an alternative decision about offering stock. And I think what happened here was the district court confused those two issues, looked at Taylor and saw this court's rejection of the alternative investment theory of damages, but instead took that to mean that this court was rejecting the Fifth Third file, Dutenhofer, Griffin, pleading requirements for alleging that a fiduciary should have acted differently. So for us, we say that there were a number of things here going on, but one of the things we say is that file, Dutenhofer, and Griffin provide the proper pleading standards set by this court for pleading an ERISA claim. For the causation element. For the causation element. And we say, for example, in file, there's language in file that we cite in our brief that says, for a causation, this is what a plaintiff has to allege. You're saying that you don't have to plead the alternative investment at all? We don't. Do you? No. Are you saying you are? No, we don't. Of damages, we don't. We don't plead an alternative investment theory of damages, meaning we're not alleging that one element of damages here is that had they invested in another alternative in the plan, they would have received higher benefits. So you make a distinction between alternative theory of damages and alternative investment theory of what? Causation. Causation. Okay. Or liability, I suppose would be better. Okay. Okay. And do you argue that you pled an alternative investment theory of liability? Of liability, yes, we do. Are you arguing that you pled both theories, i.e., alternative investment and artificial inflation? In the original complaint that we filed, yes, I think we have at least one paragraph in there where we allege alternative investment theory because when we filed it, that was already in the Taylor complaint, and we pretty much just added to it our allegations about why our particular plaintiffs had standing where. Well, okay. But what I'm driving at is, I mean, do you argue before us that you have pled artificial inflation in addition to the alternative investment theories of liability? Yes. Both theories? Yes, they're both in that complaint. Okay. Very well. Thank you, Mr. Fearon. Are you saying Taylor had both in theirs, too? Taylor, I believe, had both. Taylor had both in the complaint. It was the same complaint as Taylor, you just changed the loss that your client had. We added allegations about the loss. That's the difference? Yes, to specifically address the lack of standing issue that led to Taylor. Your Honor, may I just address the amendment issue very quickly? You could do it for a minute. Thank you. After the district court dismissed our case, we almost immediately filed a motion for relief from the judgment so that we could put on file an amended complaint. We alleged in support of that that the district court had previously upheld similar claims on the 12B6 ground. Right. But, I mean, didn't our decision in Taylor suggest that there might be a freight train coming? Not really. So this is what I hope to explain, was not really because for us, and this wasn't a calculated decision, but for us, we looked at Taylor and we said we don't have that same problem. The problem with Taylor was the standing issue. Dura is a 12B6 case. Excuse me? Dura itself. Taylor applies Dura. Dura is a 12B6 case, number one. Number two, I mean, you're an experienced class action practitioner, and I'm sure you know that the distinction between no injury for standing purposes and no injury for 12B6 purposes is oftentimes, you know, illusory in these cases. Right, but for us. So, I mean, why shouldn't you have figured out, hey, maybe we need to amend earlier rather than after the court rules? Because for us, we looked at the prior 12B6 decision. We looked at the three decisions from file, Griffin and Dudenhofer, and we looked at the problem in Taylor, which was standing, and we said our plaintiffs don't have that problem, and that's why we didn't. Okay. And, I mean, you've briefed it extensively, so don't worry that, you know, we're not cognizant of your arguments there. I understand. Thank you. All right. You'll have your rebuttal. Hear from Mr. Warren. Good morning, Your Honors. Daniel Warren on behalf of Key Court and the other defendants. Plaintiffs' argument today is that they don't have an alternative investment theory of causation. But, in fact, in their briefs, that is what they argued. They relied on this court's decision in Feele v. State Street, where this court found a causal link was adequately alleged in that very different case, not involving any element of artificial inflation at all, simply by alleging that a reasonable fiduciary would have made a different investment decision on behalf of the plaintiff. That's the same type of allegation that plaintiffs have, up until today, I understood, argued that satisfied their obligation to allege causation. That's an alternative investment theory of causation. It's designed to create a causal link between an alleged breach and an alternative investment measure of damages. And as counsel and the court, I think, agreed during his opening comments. Let me ask you, why doesn't Dudenhofer have some implication in this case? Your Honor, in the Dudenhofer v. Fifth Third case, the parties were not disputing how to plead proximate cause. They weren't disputing how to measure the damages. What was at issue in the Dudenhofer case was the application of the so-called mensch presumption, which, as the court knows, is an abuse of discretion standard that's given to ESOP fiduciaries when they decide to invest. I can't hear you, counsel. I'm sorry. Then you're talking to your kids. I apologize. When they're bad. What was at issue in the Dudenhofer case, Your Honor, was not how to plead proximate cause. It was not how to plead a loss. It was whether or not the mensch presumption, which is an abuse of discretion standard that's given to ESOP fiduciaries, should apply at the pleading stage. In contrast, in the Taylor case, where, as we've established, the same exact complaint was filed as in this case, the whole issue boiled down to whether the complaint should be construed as being based on artificial inflation, whether the complaint should be construed as alleging that Keycorp artificially inflated its stock, because that construction would dictate how to measure damages in the case, which in turn would help the court determine whether Ms. Taylor had standing or not. What the court found was that the alternative investment measure of damages, which Ms. Taylor was asking the court to apply and which these plaintiffs have also asked both the district court and this court to apply, was inappropriate. Why? Because the performance of an alternative investment bears no causal relationship to the breach that's alleged here. Well, I mean, you're assuming that they've only pled an artificial inflation theory of liability. Is that fair? That's a premise of your argument. It is, Your Honor, but I would go further and say that is a finding, a construction of the complaint that this court already made in Taylor. I understand your argument there, but if we just set that aside for a moment, it does seem that they have allegations in their complaint. I mean, they've got a lot of allegations that could be construed as an alternative investment theory of liability. I mean, I want to give you a chance to tell me why that's not true. For example, I apologize, I don't have paragraph numbers here, but they say the Keycorp stock was an extraordinary risk far and above the normal acceptable risk. In a different paragraph, they say, nonetheless, during the class period, defendants continued to invest the plan's assets in Keycorp stock and to direct and approve the ongoing automatic investment. Defendants breached their fiduciary duties by continuing to offer Keycorp common stock as an investment option when it was imprudent to do so. The plan suffered at least tens of millions of dollars in losses because substantial assets of the plan were imprudently invested. Isn't that an alternative investment theory of liability? It's an alternative investment attempt to allege imprudence that's based at its core on an allegation that Keycorp artificially inflated its stock. Well, but, I mean, I understand, you know, maybe read in context and I understand, you know, Taylor had this at its core language, but again, if we just set that aside and look at these allegations, I mean, they just say it's risky, right? Yes, Your Honor, they have the words, the allegations that you quoted, but this Court already went to the trouble of construing this 95-page complaint and the very issue that it was trying to decide when it made that construction was the same one that you're raising now, which is, is this merely an artificial inflation case or is this also an alternative investment case? Is it your position that if we ruled against you that we would be ruling contrary to what Taylor? Yes, Your Honor, because the same argument is before you again today. They are asking essentially for a second bite at the apple from this Court. The Taylor Court held in characterizing and construing this same exact complaint, and I'll quote from Taylor, Taylor asserts that defendants breached their fiduciary duties by concealing Keycorp's, quote, true financial and operating condition, rendering Keycorp stock an imprudent investment throughout the class period. So while this Court recognized that there was an imprudent allegation in the complaint, it was very clear that that imprudence was allegedly based on the artificial inflation of the stock. And if you go through this very lengthy complaint, you'll see in paragraph after paragraph, in heading after heading that they've inserted into their complaint, a constant theme that Keycorp failed to disclose the facts that they thought rendered the stock imprudent. So this Court had to decide in Taylor whether an alternative investment measure of damages was appropriate. Because if it was, then Ms. Taylor would have had standing. Their whole argument was she has standing because another investment would have done better than Keycorp stock. So without regard to whether or not she lost money on an out-of-pocket basis, she did less well than she would have done had the fiduciaries moved the stock to another investment. So if this Court had found that there was a viable alternative investment, allegation in theory properly stated in this same exact complaint, this Court would have decided that she had standing. They had to determine that. Not necessarily. I mean, Mr. Fearon makes a distinction between alternative or artificial inflation theory of liability and the same theory of damages. And the issue in Taylor was whether they suffered an injury. I mean, you guys made a no-injury argument, right? And so the Court didn't have to address whether there was an alternative investment theory of liability. Because even if there was such an allegation, absent any injury, it wouldn't matter, right? Well, I think you've assumed away what I would say. Okay. I mean, I want you to tell me where I'm making the wrong assumption. I think the assumption that I would disagree with, Your Honor, is that if there was a viable alternative investment theory of liability stated in the complaint, then she would have had an injury, in fact, because she did less well. Her assets invested in the plan did not perform as well as they otherwise would have had the fiduciaries done what Mr. Fearon says they should have done. I understand the logic of what you're saying. Did our Court specifically say anything or intimate anything that backs up what you just said? I think the Court did in a couple of different places. Okay. And I'm looking at the slip opinion at page 6. Slip opinion? I'm sorry. I need F-3rd sites, but that's okay. I believe it's page 612 of the decision. Okay. 680 F-3rd at page 612. This Court said in discussing the very argument that was being presented there, which I think is very similar to the one that's being presented here, and I quote, Taylor disputes that out-of-pocket loss is an appropriate measure of her injury, suggesting that we use an alternative investment theory. Specifically, Taylor claims that she would have made more money on her investments if her holdings had been transferred away from Key Corp stock and placed in, in the example that was used, with the S&P 500. Then the Court said, We hold that such a measure of damages is not appropriate in this case. And then in explaining why that was their conclusion, this Court said in the very next paragraph, Damages based upon an entirely different investment vehicle, such as the S&P 500, are not fairly traceable to the defendant's breach. So it was not based purely on the fact that Ms. Taylor was someone who sold at a profit. They were, this Court was referring to the alleged breach that was set forth in the complaint. In other words, that breach was a misrepresentation about value rather than a bad investment decision. Correct, Your Honor. I think that's, I agree with that statement. And if you look, for example, and if you're looking for references in the complaint that I think this Court relied on in reaching that conclusion, paragraph 63 of the amended complaint states, Had defendants disclosed to participants Key Corp's true financial and operating condition, participants would not have chosen Key Corp common stock as an investment option to the extent that they did. So what they are alleging, and this Court has already held it, has already found it, what they are alleging is that there was a misrepresentation, that there was a concealment, and that that caused them to buy stock either at a price that they otherwise wouldn't have bought it or in an amount that they otherwise would not have bought it. What Taylor holds is the proper measure of damages for that is out of pocket, that Dura applies, and specifically the alternative investment theory has no application here. So we are simply retreading ground that this Court has already covered. And when that freight train came, plaintiffs were on notice that this Court had construed their complaint in that way. Plaintiffs were clearly aware that if they intended to proceed on some theory other than artificial inflation, and if they intended to seek alternative investment damages, they needed to amend their complaint. Okay, so let's say you're right about that. I'm not saying you are, but let's say Taylor decides the issue of what theory of liability has been pled, and let's say they're confined to an artificial inflation theory. This case is, I mean, there have been some new allegations. I mean, this is technically a different case than Taylor. These are different plaintiffs. They added some allegations. But so the causation standard for the artificial inflation is you have to show that there was a misrepresentation that inflates. There has to be a revelation about the truth that deflates, and the deflation has to go below what you obtained it for. Is that correct? Yes. Okay, and so under that theory, they allege that the market price of Key Corp's common stock was artificially inflated due to the concealment. Subsequent announcements were devastating to Key Corp's share price and ultimately to the value of these folks' 401ks. Why doesn't that meet the causation test even of Dura-Taylor? Because they don't allege the stock price dropped in response to a disclosure of a prior concealment. They don't even contend that they do. And when they did try belatedly to amend their complaint after final judgment, they did not try to buttress those allegations, but rather sought to eliminate the artificial inflation theory from their case altogether. But if you look, so there's no contention here that they meet these Dura allegations, and they don't. And I know it's hard to go through a 95-page complaint as we stand here now, but I can point you, by way of example, to two specific disclosures that they reference in their complaint, one being on December 20, 2007, when disclosures were made about housing loan losses. That was followed the next day by an increase in Key Corp stock in the amount of $1.50. And they also point to a disclosure on July 22, 2008, relating to the leveraged lease issues, and they talk about the market reacting to that. Well, the market reacted to that disclosure by going up again. So they did not attempt in their complaint to show a loss connected to any artificial inflation of the stock. They instead sought to establish an alternative investment theory of causation and damages that they could have done better in some other investment vehicle. And that puts them squarely back in the holding of Taylor, which already decided that this very same complaint that they made a strategic decision to copy word for word in Judge Kethledge, it wasn't that they added any allegations in this complaint about defendant's conduct. The only differences, and they themselves say this, were about their particular investment histories. And it is, in effect, the same parties here because we have the same alleged class, the same defendants, and word for word, the same theory of breach. Word for word. But it's technically not law of the case, right? I mean, it's a different case. They haven't gotten certification yet. You'd be the first to say we can't treat it as if they have. I mean, I think for all functional purposes, that question almost doesn't matter because just on a stare decisis basis. I mean, you really have to go to precedent, right? And what closer precedent could you have than when they made a deliberate choice to copy the case? And when they themselves say at page 21 of their brief, their opening brief, that they have simply stepped into Ann Taylor's shoes for the sole purpose of asserting the claims that she already made. And that is all that they've done here. So whether we call this law of the case or we call it stare decisis, it is binding here. And again, if they wanted to assert a different theory, they had every opportunity to do that. And instead of taking that opportunity, they took a roll of the dice. They wanted to wait and see if they could get through the gate on their artificial inflation theory a second time. And this court has been very clear in the Glazer case, in the recent case, Judge Seiler, that you authored in C&L Ward, that waiting and seeing is not a viable option if a litigant wants to... or at least it's not a viable way of getting a second bite at the apple. If they wait for final judgment, they've waited too long. This was not a dress rehearsal we had down below. It was a lawsuit. And just as we wouldn't be allowed, if we were to have lost a final judgment, to say, can we try again with a different theory of defense? It's not fair or appropriate. It's not consistent with the notions of finality to allow the plaintiffs to come forward with a new theory once their first theory fails. They were on notice. This court had put the handwriting on the wall. That handwriting was put forth in a published decision of this court and Taylor. And they knew that they had an artificial inflation case, and that's all they had. And to the extent they were alleging imprudence the way they did it, according to this court's careful construction of this complaint, was they made it based on their theory of artificial inflation. Okay. Thank you for your argument. We'll hear from Mr. Fearon. Thank you, Your Honors. We... I think I should clarify up front the allegations in this complaint. I think Judge Kethledge, you asked... Kethledge, I'm sorry. You asked me before about what we do and what we don't allege. But one of the things that's important here is that there is an artificial inflation claim in the case. There's an unduly risky claim that we make. And that alone, forget about artificial inflation, even if defendants said nothing, we would still have a claim that defendants violated their fiduciary duties by offering stock that was unduly risky, like the cook who put some poison on the menu. Okay. I understand your argument. But, I mean, I think what you need to grapple with is the Taylor case. And what Mr. Warren just said is that, you know, in Taylor, fair reading in his view is that to the extent you purported to allege alternative investment theory, it was that... or imprudent investment, it was that it was imprudent because of the inflated value. And so how do you get out from under Taylor saying what it said about the nature of the liability theory in your complaint? Because Taylor, on the one hand, is a standing decision and it addressed the plaintiff's lack of standing. Okay. Assume that distinction isn't persuasive. Okay. So then the other thing is that in Taylor, the plaintiff only could go on, for purposes of pursuing these claims, could only go on the alternative investment theory of damages, which we don't need here. If it's in our complaint, we don't need it. And we've said that in our brief. We don't need it. We don't have to show it. And, Your Honor, you had asked me before about some of the allegations that we make in our complaint. We don't allege in our complaint what purchase price or acquisition price Mr. Maddock had when he first acquired the stock. What we do allege in a couple of different places, for example, in Record 325, it's Paragraph 19 of our complaint, as an example, we say, on December 31, 2006, Mr. Maddock held 1,700 shares of Key Corp. stock, valued at $65,000. I remember that. Okay. And we make similar allegations as well. We also then have a causation paragraph where we allege that the plan and the class suffered losses as a result of offering imprudent stock. But do you say, I mean, do you specify anywhere losses relative to the price at which your client obtained the stock, or is it losses relative to some peak it might have hit at some point? Well, we allege, for example, in the paragraph that I just mentioned, we use that date, December 31, 2006, because it was the end of the year right before the class period. So we use that as a measure. We don't go through each individual acquisition by the plaintiff or by the class members. With FILE, that, in our view, FILE, Dudenhofer, and Griffin provide the pleading standard. This was not a roll of the dice by experienced class counsel, and this is not a case like C&L, although defendants didn't include that decision in their briefing here. I'm aware of it, and that was a far different situation than this. That was a calculated decision by class counsel, or by counsel in that case, to not assert certain claims because they would have been compelled to arbitrate. That's not what this was. When we looked at this Taylor decision, we saw it. We viewed it as a standing case. We knew how defendants would interpret that and argue it, but we didn't feel like it was detrimental to us. But at the same time, we didn't think, given that FILE, Dudenhofer, and Griffin had recently come down before we put in our opposition papers and we saw what the pleading requirements were there, we felt we met them, and there was absolutely no reason for us to amend. So in fairness to us, what we think is fair is for the court to reverse the lower court. We think it's unfair. This is Mr. Maddox's first chance at a complaint. We had a reasonable basis for putting that complaint on FILE. Normally you don't amend after final judgment. No, we don't. Usually the bell has rung. But this, in our view, is a bit of an unusual situation. We'd ask the court to consider this because it's our first chance at amending. We stayed for 15 months. We fought the stay, and we did everything we think we could have done in order to move this case along. So we'd hate for that to be held against the class here, who suffered millions of dollars of losses. Okay. Well, we thank you both for your arguments. It really was a very well-argued case by both of you, and I can assure you that we're going to give it very careful consideration. Thank you, Your Honor. Thanks. Clerk may adjourn court.